# JANUARY TERM, 1919.*

### STOCIN v. C. R. WILSON BODY CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—LOSS OF ARM—WORDS AND PHRASES—COMMON MEANING—STATUTES.

> In proceedings under the workmen's compensation law, where plaintiff's arm, as the result of an accident in defendant's employ, was amputated above the forearm, resulting in atrophy of the muscles of the upper arm, he was properly awarded compensation of $10 per week for 200 weeks for the loss of an arm, as provided in section 10, part 2 of said act (2 Comp. Laws 1915, § 5440), he having lost an arm according to the common and approved usage of the language (1 Comp. Laws 1915, § 64, subd. 1), as testified to by the attending physician.

Certiorari to Industrial Accident Board. Submitted January 21, 1919. (Docket No. 81.) Decided April 3, 1919.

Peter Stocin presented his claim for compensation against the C. R. Wilson Body Company for injuries received in defendant's employ. From an order awarding compensation, defendant and the Royal Indemnity Company, insurer, bring certiorari. Affirmed.

*John B. Coughlin,* for appellants.

MOORE, J. The respondent C. R. Wilson Body Company was engaged in the manufacture of automobile bodies on October 8, 1917, and was operating under the workmen's compensation act of the State of Michigan. The Royal Indemnity Company was on that date the insurer of the C. R. Wilson Body Company. It

*Continued from Vol. 204.
See notes in L. R. A. 1916A, 23; L. R. A. 1917D, 80.

is agreed that on that date the plaintiff was an employee of the C. R. Wilson Body Company, that he received an injury arising out of and in the course of his employment and that his wages were $21.60 a week. The said injury resulting in a crushed arm at the junction of the upper and middle third, necessitating amputation at a point shown on the annexed diagram.

Amputation right fore-arm in the upper third.

A claim was made and the arbitration committee awarded plaintiff compensation for 200 weeks. An appeal was taken to the industrial board who on July 26, 1918, made an award of 200 weeks' compensation. The case was brought before this court on a writ of certiorari to review the proceedings.

The respondent claims the industrial accident board erred as follows:

1. In making an award of 200 weeks' compensation.
2. In finding that applicant has lost the right arm by amputation.
3. In not finding that applicant is entitled to 150 weeks' compensation.

We are not furnished with a brief on the part of the appellee.

In the testimony of one of the doctors appears the following:

"*Chairman Zierleyn:* It is a fact, doctor, the forearm is part of the arm proper?

"*A.* Yes, sir.

"*Chairman Zierleyn:* The forearm in this case has been amputated?

"*A.* Yes, sir.

"*Chairman Zierleyn:* Because of the amputation you have an atrophy of the muscles of the upper arm?

"*A.* That is right.

"*Chairman Zierleyn:* And to the ordinary layman it would appear that the man had lost the arm?

"*A.* That is right.

"*Chairman Zierleyn:* The fact of the amputation having taken place where it has taken place in this case has destroyed the use of the arm, has it not?

"*A.* It has not destroyed it entirely, but it has taken away a great deal of its function."

Redirect examination:

"*By Mr. Coughlin: Q.* Doctor, is not the fact it has taken away a great deal of the function due to the fact the forearm and wrist are gone and cannot be called into use as it would be if they were present?

"*A.* Not entirely. In amputation of limbs, legs and arms, the nerve control at the joint of amputation— it causes the nerves below to become atrophied. Loss of the part is mostly mechanical.

"*By Mr. Ward* (arbitrator for respondent): *Q.* Doctor, you say to the layman it would appear this man has lost his arm? Is that correct, looking at him?

"*A.* I would say part of his arm.

"*Q.* Assuming that you had not seen this man at all and you were described as to where it was amputated what would you say as a doctor?

"*A.* I would say he lost his arm just as I did say."

The industrial accident board based its award upon the finding—

"that as a matter of fact the applicant has lost an arm within the meaning of the workmen's compensation law and is entitled to be paid $10 per week for a period of 200 weeks as for the loss of an arm."

In section 10 of part 2 of Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, § 5440), it is provided that the compensation for an injury shall be:

"For the loss of an arm fifty per centum of average weekly wages for two hundred weeks."

It is provided in 1 How. Stat. (2d Ed.) § 2, subd. 1 (1 Comp. Laws 1915, § 64, subd. 1) :

"All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."

It is said in a Corpus Juris Treatise entitled Workmen's Compensation Acts, in a note on page 41, as follows:

" 'The statute not having been designed to promote, but to decrease the opportunity for unnecessary litigation, its purpose will be best subserved if plain words are given their ordinary signification.' *Nichol's Case,* 217 Mass. 3, 5 (104 N. E. 566, Ann. Cas. 1915C, 862).

" 'In giving construction to such statutes words are to be taken and construed in the sense in which they are understood in common language, taking into consideration the text and subject-matter relative to which they are employed.' *Northwestern Iron Co.* v. *Industrial Commission,* 154 Wis. 97, 101 (142 N. W. 271, L. R. A. 1916A, 366, Ann. Cas. 1915B, 877)."

We think, applying the principles of law stated to the testimony of the doctor which we have quoted, it must be said that there is testimony to justify the award, and it is affirmed, with costs to the claimant.

BIRD, C. J., and OSTRANDER, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.