GUIDO BRUGIONI, Appellee, v. SAYLOR COAL COMPANY et al.,
Appellants.

MASTER AND SERVANT:    Workmen's Compensation Act—Construc-
tion—''More Than One Phalange.''    The loss of a *substantial portion*
of the second phalange of a finger, i. e., one fourth (whether such
loss was occasioned by the initial injury or was necessitated in
order to effect a proper surgical operation), is equivalent to the loss
of the entire finger, within the meaning of Sec. 2477-m9, Code Supp.,
1913.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

MARCH 11, 1924.

REHEARING DENIED JUNE 28, 1924.

THIS is a proceeding under the Workmen's Compensation
Act.   It was heard in the first instance before the industrial
commissioner.   The plaintiff was an employee of the defendant
Saylor Coal Company.   The other defendant was the insurance
carrier.   From an order made by the deputy industrial com-
missioner, the plaintiff appealed to the district court of Polk
County.   On the hearing of such appeal, the order made by the
industrial commissioner was modified.   From such order of the
district court of Polk County, the defendant has appealed.—
*Affirmed.*

*Bates & Dashiell,* for appellants.

*Clarkson & Huebner,* for appellee.

EVANS, J.—I.   On July 21, 1921, the plaintiff, while en-
gaged in his work as a coal miner and as an employee of the
defendant coal company, suffered an injury to his hand by a fall
of slate, whereby he became entitled to compensation under the
provisions of Section 2477-m9 of the Code Supplement, 1913,
and under Subsection (j) thereof, as amended by Chapter 270,

Acts of the Thirty-seventh General Assembly, and Chapter 220, Acts of the Thirty-eighth General Assembly. This section provides as follows:

"(j) For disability partial in character and permanent in quality, the compensation shall be as follows:

"For all cases included in the following schedule, compensation shall be paid as follows, to wit: * * *

"(2) For the loss of a first finger, commonly called the index finger, sixty per cent of daily wages during thirty weeks.

"(3) For the loss of a second finger, sixty per cent of daily wages during twenty-five weeks.

"(4) For the loss of a third finger, sixty per cent of daily wages during twenty weeks. * * *

"(6) For the loss of the first phalange of the thumb or of any finger shall be considered to be equal to the loss of one half of such thumb or finger and compensation shall be one half of the amounts above specified.

"(7) The loss of more than one phalange shall be considered as the loss of the entire finger or thumb; provided, however, that in no case shall the amount received for more than one finger exceed the amount provided in this schedule for the loss of a hand."

The injury consisted of the crushing of plaintiff's three fingers. The deputy industrial commissioner classified the extent of his loss as the loss of one phalange each on the first and third fingers, and of two phalanges of the middle finger. Under the statute, this would fix the compensation as for the loss of half of each of the first and third fingers, and as for the loss of the whole of the middle finger. The contention for the plaintiff is that his loss as to the first and third fingers should have been classified as the loss of each finger, in that he lost "more than one phalange" of each finger.

The dispute here involves the injury only to the first and third fingers. The question in dispute is whether in each case the loss should be classified as half a finger or as the entire finger. It appears in each case that the first phalange was crushed, and that complete injury thereof extended to the first joint. In order to get a proper recovery from the injury, it

was surgically necessary to remove a portion of the second phalange. Amputation at the joint would not be proper surgery. The deputy industrial commissioner held that no account could be taken of the loss of that part of the second phalange which was the result of surgical necessity, and which was not included within the initial injury. This was clearly an erroneous view, and the defendant does not contend for it. The contention for the defendant is that only a small portion of the second phalange was thus removed, and that the removal of such a portion did not bring the case within the terms of Paragraph 7 of the subsection above quoted. The decisive question presented for our consideration is the construction of such Paragraph 7, and specifically the construction of the initial phrase, "the loss of more than one phalange." The construction contended for by the plaintiff is that the loss of any substantial portion of the second phalange constitutes the loss of "more than one phalange" and entitles the plaintiff to compensation for the loss of the entire finger; whereas the construction contended for by the defendant is that "more than one phalange" means *more phalanges than one phalange,* and that, therefore, only a loss of substantially *all* the second phalange will constitute a loss of "more than one phalange" and entitle plaintiff to compensation as for the loss of the entire finger. To put the dispute in another form, is the word "more," as used in the statute, so used as an *adjective* or is it used as an *adverb?* The defendant contends for the adjective; the plaintiff for the adverb. If we treat it as an adjective, its noun, "phalanges," must be supplied; whereas, if we treat it as an adverb, the expression is complete in itself. To put the dispute in still another form, and to indicate the nearest approach of the contending parties, the plaintiff concedes that the loss of a slight portion of the second phalange might not bring the case within the operation of Paragraph 7; but he contends that the loss of any *substantial portion* of the second phalange does bring the same within the seventh paragraph. On the other hand, the defendant concedes that the loss of the second phalange need not be absolutely complete, in order to bring the case within the operation of Paragraph 7; but it contends that the loss must extend to *substantially all* of such pha-

lange.  So the plaintiff declares for a *substantial portion* as the criterion; and the defendant for *substantially all*.

Is "more" intended to be used in such paragraph as an adjective or as an adverb?  There are plausible reasons that can be put forth for either contention, and they have not been overlooked in the able briefs of counsel.  We reach the conclusion quite readily, however, that the word "more" carries the adverbial character, and not the adjective one.  One reason for this conclusion is that the contrary construction is laborious, and requires the supplying of an omitted word, which would result in awkward speech.  It would amount to saying that "more than one phalange" necessarily means *two* phalanges.  If such were the legislative intent, it could have been easily and simply expressed.  If it were the legislative intent that only the loss of *two phalanges* should constitute the equivalent of the loss of a finger, such intent could have been easily expressed, and much more easily than by the construction contended for by the defendant.  If *two* phalanges were in the legislative mind, there was no natural reason why they should have been described as "more than one phalange."  The defendant relies upon the authority of the case of *In re Petrie,* 215 N. Y. 335 (109 N. E. 549), and contends that the Court of Appeals in that case adopted such construction of a similar statute.  We do not so read the cited case.  It was found in that case as a fact that "substantially all" of the phalange had been lost.  Possibly an inference might fairly be drawn from the opinion that, if a lesser portion had been lost, compensation would have been denied; but the court did not commit itself directly to any such holding.  Likewise, reliance is placed upon a decision of the Supreme Court of Illinois in *McMorran & Co. v. Industrial Commission,* 290 Ill. 569 (125 N. E. 284).  What was held in this case was that the loss of one sixteenth of an inch of the first phalange was not a loss of the phalange, within the meaning of the statute.  The *Petrie* case from the New York Court of Appeals was cited as authority.  In neither of these cases was the court confronted squarely with the question which confronts us.  The very purpose of the Workmen's Compensation Act is to fix definite rules for the measuring of compensation for specific

injuries.  To that end it is essential that simple words be simply construed, and that definite terms be not opened up to indefinite construction.  The statute is always subject to amendment by the legislature.  It is important that it be not amended by judicial construction.  We sustain the construction contended for by the plaintiff, as being the simpler and more natural construction of the terms used.

II.  This leaves for consideration the question of fact, under the evidence, whether a substantial portion of the second phalange was lost.  The deputy industrial commissioner made no finding of fact on that question.  A reversal of his order on the question of law by the district court was proper and inevitable.  That court was thereupon confronted with the necessity of looking to the evidence for a finding of fact at this point.  Under the evidence of the X-ray experts, the district court could have found either that one fourth of the second phalange was lost or that one half thereof was lost.  Such was the variance in the evidence of the experts.  Upon either hypothesis, there was a substantial portion of such phalange lost, and such was the finding of the district court.  Its judgment is, accordingly, affirmed.—*Affirmed.*

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.